UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHRISTINE CARROLL, individually and on behalf of residents of "A Fortress," <br>     *Plaintiff*, <br><br> v. <br><br> TOWN OF MANCHESTER, CITY OF HARTFORD, ROGER THRALL, NANCY NAVARRETTA, and ADVANCED BEHAVIORAL HEALTH, INC., <br>     *Defendants*. | 3:25-CV-1671 (SVN) <br><br><br><br><br><br><br><br> January 28, 2026 |

## ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Sarala V. Nagala, United States District Judge.

By complaint dated October 5, 2025, Plaintiff Christine Carroll, an owner of multiple substance abuse recovery properties, commenced this action on behalf of herself and residents of her properties (John Does 1-30) against Defendants Town of Manchester and Roger Thrall, a Manchester fire inspector (collectively, the "Manchester Defendants"); the City of Hartford; Nancy Navarretta, Commissioner of the State of Connecticut Department of Mental Health and Addiction Services ("DMHAS"); and Advanced Behavioral Health, Inc. ("ABH"). Compl., ECF No. 1. Plaintiff alleges that Defendants enforced city ordinances against her in a discriminatory manner, in violation of the Fair Housing Act ("FHA"), the Americans with Disabilities Act ("ADA"), and the Equal Protection and Due Process clauses of the Fourteenth Amendment to the U.S. Constitution. Contemporaneously with the filing of her complaint, Plaintiff moved for a temporary restraining order ("TRO") and preliminary injunction requesting that the Court enjoin Defendants from enforcing any ordinances that would effectively result in the closure of her properties, ECF No. 2, which the Court previously denied in part, insofar as it requested an *ex*

*parte* TRO.  *See* Order, ECF No. 9.  Following notice to Defendants, the motion has been fully briefed, and the Court held argument on the motion on January 28, 2026.  As Plaintiff has not demonstrated that she is entitled to the preliminary injunctive relief sought, the Court DENIES Plaintiff's motion.

I.      BRIEF FACTUAL BACKGROUND

In the interest of expediency, the Court presumes the parties' familiarity with Plaintiff's allegations.

In brief, Plaintiff Carroll owns and operates multiple substance abuse recovery properties, under the name "A Fortress."  Compl., ECF No. 1 ¶¶ 5 (Introduction Section), 13.  These group living facilities provide a supportive environment for individuals recovering from addiction and other disabilities, and offers group accountability, curfews, abstinence policies and peer support.  *Id.* ¶ 13.  The residences are located at 101-103 Cedar Street, Manchester, Connecticut; 510 New Britan Avenue, Hartford, Connecticut; and 73 Walnut Street, Manchester, Connecticut, among other locations.  *Id.* ¶¶ 11, 12, 14.  Plaintiff's complaint details various ways that Defendants allegedly enforced zoning, building and fire codes and ordinances at these properties in a discriminatory manner.  *See generally* ECF No. 1.

Plaintiff requests that the Court issue a TRO and preliminary injunction enjoining "Defendants, the Town of Manchester and City of Hartford, and its officers, agent, employees, and others acting in concert with them, from enforcing any directive, ordinance, or policy that would require Plaintiffs to cease operation" of 510 New Britain Avenue, Hartford, CT and 101-103 Cedar Street, Manchester, CT, "or evict its disabled residents."  Mot. for TRO and Prelim. Inj., ECF No.

2 at 1. Although Plaintiff's motion appears to be directed against only the Manchester Defendants and the City of Hartford, all Defendants oppose Plaintiff's motion. ECF Nos. 28, 30, 34, 36.[1]

## II.    LEGAL STANDARD

In the Second Circuit, the standard for issuing a TRO is the same as the standard for a preliminary injunction. *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008). A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (citation omitted). "The purpose of a preliminary injunction is . . . to preserve the relative positions of the parties" pending final resolution on the merits. *N. Am. Soccer League, LLC. v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37–38 (2d Cir. 2018) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). A party seeking a preliminary injunction must typically establish:

> a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction.

*Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (cleaned up) (quoting *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010)). Among these elements, "'irreparable harm is the single most important prerequisite for a preliminary injunction." *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (internal citation and quotation marks

---

[1] At the argument on this motion, Plaintiff shifted her requested relief to include enjoining DHMAS from continuing to enforce its temporary suspension on new admissions to the eight beds at Plaintiff's Manchester locations that receive DHMAS funding, which is in place pending DHMAS's investigation of complaints received regarding overcrowding and fire code and zoning violations. As Plaintiff's written motion for preliminary injunctive relief did not mention either Defendant Navarretta or DHMAS specifically, the Court does not interpret it to have requested relief as against them. Plaintiff's reference to "officers, agents, employees, and others acting in concert" with the Town of Manchester and City of Hartford is insufficient to encompass Navarretta.

omitted). Additionally, "[a] plaintiff cannot rely on the "'fair-ground-for-litigation' alternative to challenge 'governmental action taken in the public interest pursuant to a statutory or regulatory scheme.'" *Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (quoting *Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir. 1989)); *see also Able v. U.S.*, 44 F.3d 128, 131 (2d Cir. 1995) ("This exception reflects the idea that governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly."). And in a suit against governmental entities, the balancing of the equities "merges" into consideration of the public interest. *SAM Party of N.Y. v. Kosinski*, 987 F.3d 267, 278 (2d Cir. 2021).

Further, preliminary injunctions can be either prohibitory or mandatory. *See N. Am. Soccer League, LLC*, 883 F.3d at 36–37 (citing *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995)). While the typical preliminary injunction is "prohibitory" and seeks only to maintain the *status quo* pending a trial on the merits, a "mandatory" injunction *alters* the *status quo* by "commanding some positive act." *Id.* at 35. "[T]his distinction is important because [the Second Circuit has] held that a mandatory injunction should issue 'only upon a *clear* showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'" *Tom Doherty Assocs., Inc.*, 60 F.3d at 34 (emphasis added) (quoting *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985)). A heightened standard is imposed for mandatory injunctions, in part, "because injunctions of those sorts tend to be particularly burdensome to the defendants subject to them." *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 667 (2d Cir. 2023) (citing 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948.2 (3d ed. 2025)). "The 'clear' or 'substantial' showing requirement—the

variation in language does not reflect a variation in meaning—thus alters the traditional formula by requiring that the movant demonstrate a greater likelihood of success." *Tom Doherty Assocs.*, 60 F.3d at 34 (citation omitted). In addition, if the requested injunction is mandatory, the movant must "make a 'strong showing' of irreparable harm . . . , in addition to showing that the preliminary injunction is in the public interest." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (citation omitted); *see also Winter v. Nat'l Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) (requiring, for issuance of a preliminary injunction, that the balance of equities tips in the movant's favor and that an injunction is in the public interest).

### III.    DISCUSSION

#### A. <u>Mandatory or Prohibitory Injunction</u>

As an initial matter, the Court concludes that Plaintiff is seeking a mandatory injunction. At the time that the complaint and request for injunctive relief were filed, Plaintiff's properties were already subject to municipal inspection and had already received various notices of violations. Thus, insofar as Plaintiff's motion for injunctive relief seeks an order that Defendants be enjoined from enforcing any city ordinances or codes, Plaintiff is requesting that the Court command an affirmative act by Defendants: that they cease enforcement of existing zoning requirements. The Court thus believes that the requested injunction is mandatory, which requires a heightened standard for likelihood of success on the merits and a strong showing of irreparable harm.

#### B. <u>Irreparable Harm</u>

The Court concludes that Plaintiff has not demonstrated that she (or her residents) will suffer irreparable harm absent an injunction.

Irreparable harm is defined as "certain and imminent harm for which a monetary award does not adequately compensate." *See Wisdom Imp. Sales Co. v. Labatt Brewing Co.,* 339 F.3d 101, 113 (2d Cir. 2003) (citations omitted). In support of her argument that irreparable harm exists here, Plaintiff relies on one dated out-of-circuit authority, *Gresham v. Windrush Partners, Ltd.,* 730 F.2d 1417, 1423 (11th Cir. 1984), which held that irreparable injury may be presumed in housing discrimination cases, and a case from this District, *Stewart B. McKinney Found., Inc. v. Town Plan & Zoning Comm'n of Town of Fairfield*, 790 F. Supp. 1197, 1208 (D. Conn. 1992), which applied a rebuttable presumption of irreparable harm in *that* case because the plaintiff demonstrated a high likelihood of success on the merits of his fair housing claim—that is, he presented sufficient evidence to establish that his rights under the FHA had been violated. To be clear, the Second Circuit has not adopted a presumption of irreparable harm in housing discrimination cases. *Step By Step, Inc. v. City of Ogdensburg*, 176 F. Supp. 3d 112, 133 (N.D.N.Y. 2016). And the Court need not do so here, as it is not convinced that Plaintiff has demonstrated a likelihood of success on the merits.

Regardless of whether the presumption applies, however, the Court is not persuaded that Plaintiff and her residents will suffer irreparable harm if Defendants are permitted to enforce their fire, building and zoning codes at the subject properties. There is no indication in the record that Plaintiff will be unable to provide shelter and services to individuals recovering from substance abuse, as both the Manchester Defendants and the City of Hartford state that they have not ordered her to vacate the subject premises. Indeed, as of a joint status report filed on January 6, 2026, Plaintiff reports that she is still housing residents at both locations, and that the Town of Manchester has informed her that there are no outstanding compliance issues at 101-103 Cedar Street. Joint Status Rep., ECF No. 80 at 1–2. This remains the state of affairs today, based on

6

counsel's comments at the oral argument. While it appears that DHMAS is currently imposing a pause on funding for the eight beds it funds at Plaintiff's Manchester locations until it completes an investigation into the complaints of overcrowding and fire code and zoning violations, that pause does not directly affect the Hartford property, nor the fourteen other beds available at 101-103 Cedar Street in Manchester that are not funded through DHMAS.[2]

Nor is there any indication that the residents themselves will face harm, such as *imminent* eviction or homelessness. Although Plaintiff attaches an affidavit of resident and property manager James Brown, asserting that he will "have nowhere to go" if the 101-103 Cedar Street property is closed, *see* ECF No. 1-3, this speculative assertion alone is not sufficient to establish irreparable harm. *See, e.g., Oliva v. Brookwood Coram I, LLC*, No. 14-CV-2513 (JMA) (AYS), 2015 WL 13745439, at *6 (E.D.N.Y. Nov. 30, 2015) ("the issue of irreparable harm in the housing context is a fact-specific determination hinging upon the question of whether the plaintiff is actually facing imminent and actual eviction"), *report and recommendation adopted*, No. 14-CV-2513J (MAA) (YS), 2016 WL 3637010 (E.D.N.Y. June 30, 2016). Moreover, the parties' joint status report—filed after this motion was fully briefed—is silent on Mr. Brown's progress and does not otherwise suggest that he or any of the residents at the Manchester properties are facing homelessness. ECF No. 80. To the contrary, Plaintiff represents that residents who had to move were able to secure other appropriate housing and that there are available beds in Plaintiff's other facilities.

---

[2] At the oral argument, Plaintiff suggested that the inability for potential residents to receive initial funding for placement through DHMAS hampers their ability to reside at her homes, since they cannot afford to privately pay for the placement at the outset. Likewise, Plaintiff asserted that some residents may not be able to continue to afford to stay in Plaintiff's homes after temporary DHMAS funding for their placement expires. Neither of these issues were raised in Plaintiff's briefing on the motion and, in any event, the Court has determined that the motion for injunctive relief was not directed at Defendant Navarretta, as Commissioner of DHMAS. Thus, the Court does not consider these arguments to be within the proper scope of the motion.

Insofar as Plaintiff argues that irreparable harm is presumed when a plaintiff has alleged a constitutional violation, "[t]he Second Circuit has not clearly resolved the question of whether the infringement of a constitutional right is always considered irreparable harm." *Lore v. City of Syracuse*, No. 00-CV-1833 (HGM) (DEP), 2001 WL 263051, at *7 (N.D.N.Y. Mar. 9, 2001) (emphasis added); *Stallworth v. Joshi*, No. 17-CV-7119 (RJS), 2017 WL 8777378, at *7 (S.D.N.Y. Nov. 22, 2017) (Sullivan, J.) (recognizing that "an allegation of a constitutional violation is not a magic wand that can be waved to conjure up irreparable harm"); *Gazzola v. Hochul*, 645 F. Supp. 3d 37, 55 (N.D.N.Y. 2022). And several district courts have found that the "presumption of irreparable harm arises only *after* a plaintiff has shown a likelihood of success on the merits of the constitutional claim." *Brock v. City of New York,* No. 21-CV-11094 (AT) (SDA), 2022 WL 479256, at *4 (S.D.N.Y. Jan. 28, 2022) (emphasis added); *Weisshaus v. Cuomo*, 512 F. Supp. 3d 379, 389 (E.D.N.Y. 2021) (same, with respect to constitutional violations and violations of federal statutes); *Page v. Cuomo*, 478 F. Supp. 3d 355, 364 (N.D.N.Y. 2020) (recognizing that, by its own terms, the presumption of irreparable harm discussed in *Jolly v. Coughlin,* 76 F.3d 468 (2d Cir. 1996) arises only after a plaintiff shows likelihood of success on the merits); *see also Green v. Caron*, No. 3:22-CV-1397 (KAD), 2023 WL 6809620, at *4 (D. Conn. Oct. 16, 2023) (finding no showing of irreparable harm where plaintiff alleged the "mere possibility" that he may be "subjected to a deprivation of constitutional dimension"); *Dimartile v. Cuomo*, No. 1:20-CV-859 (GTS) (CFH), 2020 WL 4877239, at *8 (N.D.N.Y. Aug. 19, 2020) ("the likelihood of success on the constitutional claim is inextricably intertwined with whether irreparable harm exists").

The Court declines to apply such a presumption favoring Plaintiff when she has not, on the present record, demonstrated any violation of her constitutional rights. For one, Plaintiff has pleaded direct constitutional violations against Defendants, when such violations are cognizable

8

only under 42 U.S.C. § 1983. *See, e.g.*, *Fenner v. City of New York*, 392 F. App'x 892, 893 (2d Cir. 2010) (summary order) ("[W]hen 42 U.S.C. § 1983 provides a remedy, an implied cause of action grounded on the Constitution is not available.") (quoting *Pauk v. Bd. of Trustees of City Univ. of N.Y.*, 654 F.2d 856, 865 (2d Cir. 1981)); *see also Hughes v. Bedsole*, 48 F.3d 1376, 1383 n.6 (4th Cir. 1995) ("[The plaintiff] cannot bring a claim directly under the Fourteenth Amendment because it does not create a cause of action."). As Plaintiff filed the complaint through counsel, the Court need not provide any special solicitude and interpret her constitutional claims as brought under 42 U.S.C. § 1983. Thus, those claims will be dismissed in the Court's forthcoming ruling on Defendants' motions to dismiss, and Plaintiff's argument of irreparable harm based on the allegation of one or more constitutional violations fails.

Thus, having failed to show irreparable harm—the most important element of a request for preliminary injunctive relief—Plaintiff is not entitled to issuance of an injunction.

C. <u>Likelihood of Success on the Merits</u>

The Court assumes—without deciding in this ruling—that Plaintiff does not have a substantial likelihood of prevailing on the merits of her claims, as will be discussed in detail in a forthcoming ruling on Defendants' motions to dismiss the complaint. Plaintiff must make a clear showing of likelihood of success both because she is seeking a mandatory injunction and because she is seeking to enjoin governmental action taken pursuant to a regulatory scheme. The Court preliminarily assesses that Plaintiff's complaint fails to state cognizable claims for relief as currently pleaded; therefore, she will be unable to show a clear likelihood of success on the merits of her claims.

    D. <u>Balance of the Equities/Public Interest</u>

Although the Court's discussion above is dispositive of Plaintiff's motion, the Court also addresses the balance of the equities and public interest factors together, in the interest of completeness. The Court acknowledges that there is a public interest in eradicating housing discrimination against individuals recovering from substance abuse. The Court finds that there is a more compelling public interest, however, in ensuring that these substance abuse recovery facilities are safe and habitable for their intended use and that they comply with applicable standards set by governmental entities for that purpose, including building and fire codes. Defendants' written submissions in opposition to Plaintiff's motion establish that Manchester and Hartford's efforts to enforce these codes and render Plaintiffs' facilities safe for their occupants were undertaken for this purpose. For purposes of demonstrating entitlement to preliminary injunctive relief, Plaintiff has not shown that these code enforcement actions—which were initiated on the basis of complaints made to Manchester and Hartford—were merely a pretext for discrimination on the basis of disability. Thus, this factor weighs in Defendants' favor for purposes of Plaintiff's motion.

## IV. CONCLUSION

For the reasons set forth in this ruling, Plaintiff's motion for a temporary restraining order and preliminary injunction, ECF No. 2, is denied.

**SO ORDERED** at Hartford, Connecticut, this 28th day of January, 2026.

                                                                  */s/ Sarala V. Nagala*
                                                                  SARALA V. NAGALA
                                                                  UNITED STATES DISTRICT JUDGE